IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| 1- EVA KOPADDY, as Personal<br>Representative of the Estate of<br>Ronald Given,<br>Deceased,<br><br>          Plaintiff,<br><br>v.<br><br>1- POTTAWATOMIE COUNTY PUBLIC<br>SAFETY CENTER, an Oklahoma Title<br>19 Authority;<br>2- BOARD OF COUNTY COMM'RS OF<br>THE COUNTY OF POTTAWATOMIE,<br>A Political Subdivision of the State of<br>Oklahoma;<br>3- MICHAEL D. BOOTH, individually<br>and in his official capacity as Sheriff<br>of Pottawatomie County;<br>4- BREONNA R. THOMPSON,<br>individually and in her capacity as<br>Executor Director of the Pottawatomie<br>County Public Safety Center;<br>5- BRAD BANEY, individually and in his<br>official capacity as Lieutenant of the<br>Pottawatomie County Public Safety<br>Center;<br>6- J. DUGGAN, individually and in his/her<br>official capacity as a law enforcement<br>officer;<br>7- K. WILLIAMS, individually and in<br>his/her official capacity as a law<br>enforcement officer;<br>8-13- JOHN/JANE DOE(S),<br><br>          Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>Case No.  CIV-20-1280-G<br>)<br>)<br>**JURY TRIAL DEMANDED**<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

## COMPLAINT

COMES NOW Plaintiff, Eva Kopaddy, as Administrator of the Estate of Ronald Given, Deceased, by and through her attorney of record, Ronald "Skip" Kelly, and for cause of action against the above-named Defendants, she respectfully presents to the Court as follows:

### *Jurisdiction and Venue*

1. This action is brought pursuant to 42 U.S.C. §1983, and the Fourth, Eighth and Fourteenth Amendments to the United States Constitution, as well as the laws of the State of Oklahoma.

2. This Court has federal question jurisdiction of this action pursuant to 28 U.S.C., §1331; venue is proper pursuant to 28 U.S.C., §1391.

3. The matter in controversy exceeds $75,000, exclusive of costs and interest.

4. Plaintiff also asserts causes of action arising under Oklahoma law, namely claims for excessive force, negligence, assault and battery, and wrongful death. This Court has supplemental jurisdiction over these claims pursuant to 28 U.S.C., §1367.

5. Plaintiff is now, and was always material hereto, a resident of Pottawatomie County, State of Oklahoma. (Plaintiff's decedent shall be referred to as "Mr. Given" or "Plaintiff's decedent" or "Ronald Given."). Eva Kopaddy is the court-appointed Administrator of the Estate of Ronald Givens, Deceased, by

virtue of *Letters of Administration* issued to her in case number PB-2020-75 in the District Court of Pottawatomie County, State of Oklahoma.

6.  Defendant, Pottawatomie County Public Safety Center ("PCPSC") is now and at all times material hereto, an Okla. Stat. tit. 19, §§ 904.1-904.10, authority.

7.  Defendant, Board of County Commissioners of the County of Pottawatomie ("BOCC") is a political subdivision of the State of Oklahoma responsible for the PCPSC, and thus properly named pursuant to Okla. Stat. tit. 19, §4.

8.  Defendant, Michael D. Booth ("Defendant Sheriff Booth" or "Sheriff Booth"), is a duly elected Sheriff of Pottawatomie County, Oklahoma, a political subdivision of the State of Oklahoma, and is responsible for the operation of the PCPSC. Sheriff Booth is being sued in both his individual capacity and in his official capacity for acts performed while he was the Sheriff of Pottawatomie County. Sheriff Booth is being sued for both federal and state law claims. At all times relevant herein, Sheriff Booth was acting under the color of law and within the course and scope of his employment with Pottawatomie County, State of Oklahoma.

9.  Defendant, Sheriff Booth, as Sheriff of Pottawatomie County, is the final policy maker for the Pottawatomie County Sheriff's office. There is no other person who has authority over the Sheriff of Pottawatomie County, acting in his capacity as Sheriff. Both as to his own conduct and conduct of his employees, because of his position as Sheriff as Pottawatomie County, the acts, customs, policies, practices, failure to train and failure to supervise his

3

employees alleged herein are attributable to the County as well as to the Sheriff in his official capacity.

10. Defendant, Breonna R. Thompson ("Breonna Thompson"), is, and has been at all times pertinent to this action, the Executive Director of the Pottawatomie County Public Safety Center, an Okla. Stat. tit. 19, §§ 904.1-904.10, authority, and is responsible for the operation of the PCPSC. Breonna Thompson is being sued in both her individual capacity and in her official capacity for acts performed while she was the Executive Director of the PCPSC. Breonna Thompson is being sued for both federal and state law claims. At all times relevant herein, Breonna Thompson was acting under the color of law and within the course and scope of her employment with Pottawatomie County (and/or its associated Jail Trust), State of Oklahoma.

11. Defendant, Brad Baney ("Lieutenant Baney"), is, and has been at all times pertinent to this action, the Lieutenant of the Pottawatomie County Public Safety Center, an Okla. Stat. tit. 19, §§ 904.1-904.10, authority, and, upon information and belief, is responsible for supervision and oversight of detention officers and staff related to inmate custody, care, and control. Lieutenant Baney is being sued in both his individual capacity and in his official capacity for acts performed while he was the Lieutenant of the PCPSC. Lieutenant Baney is being sued for both federal and state law claims. At all times relevant herein, Lieutenant Baney was acting under the color of law and

4

within the course and scope of his employment with Pottawatomie County (and/or its associated Jail Trust), State of Oklahoma.

12. Defendant, J. Duggan ("Duggan"), is, and at all times pertinent to this action, upon information and belief, a law enforcement officer under a duly authorized law enforcement agency or administration in Shawnee, Pottawatomie County, State of Oklahoma. Duggan is being sued in both his/her individual capacity and in his/her official capacity for acts performed while he/she was acting in his/her capacity as a law enforcement officer for, upon information and belief, the City of Shawnee and/or Pottawatomie County, State of Oklahoma. Duggan is being sued for both federal and state law claims. At all times relevant herein, Duggan was acting under the color of law and within the course and scope of his/her employment with the City of Shawnee and/or Pottawatomie County (and/or its associated Jail Trust), State of Oklahoma.

13. Defendant, K. Williams ("Williams"), is, and has been at all times pertinent to this action, upon information and belief, a law enforcement officer under a duly authorized law enforcement agency or administration in Shawnee, Pottawatomie County, State of Oklahoma. Williams is being sued in both his/her individual capacity and in his/her official capacity for acts performed while he/she was acting in his/her capacity as a law enforcement officer for, upon information and belief, the City of Shawnee and/or Pottawatomie County, State of Oklahoma. Williams is being sued for both federal and state law claims. At all times relevant herein, Williams was acting under the color of law

and within the course and scope of his/her employment with the City of Shawnee and/or Pottawatomie County (and/or its associated Jail Trust), State of Oklahoma.

14. Defendants, John/Jane Doe(s) 1-3 represent other persons whose identities are not yet known but caused or contributed to Ronald Given's death by virtue of their position, acting under the color of law, negligence and intentional conduct.

15. Defendants' conduct was under color of state law within the meaning of 42 U.S.C., § 1983.

16. By and through Defendants, Pottawatomie County deliberately failed to take remedial action in the face of actual and/or constructive knowledge of constitutional violations and the assault and battery against Plaintiff's decedent.

17. At all material times herein, Defendant Sheriff Booth, as elected Sheriff of Pottawatomie County, as well as, Breonna Thompson, Executive Director of the Pottawatomie County Public Safety Center, were responsible for providing detainees at the PCPSC with reasonable care.

18. Pursuant to the Oklahoma Governmental Tort Claims Act ("OGTCA"), the Plaintiff submitted *Notice of Tort Claim* on or about July 20, 2020.

19. At all material times hereto, Ronald Given was a resident of Pottawatomie County, State of Oklahoma.

20. The acts and/or omissions giving rise to the Plaintiff's claims arose in Pottawatomie County, State of Oklahoma, which is within the Western District of Oklahoma.

### *Factual Background*

21. Plaintiff recapitulates and incorporates all material allegations in paragraphs one (1) through twenty (20) by reference herein.

22. On or about January 8, 2019, law enforcement responded to a call at Tractor Supply concerning an individual who was having a medical crisis and without any resistance, Ronald Given was transported to the emergency department located at SSM Health St. Anthony Hospital ("St. Anthony") in Shawnee, Oklahoma in which an evaluation was performed, and it was ordered that he be placed in a behavioral health center.

23. While Mr. Given was under surveillance at the emergency department by Officer Jake Duggan with the Shawnee Police Department, Officer Duggan stated that Mr. Given attempted to the leave the hospital and stated that he pushed his left hand into the shoulder of Jake Duggan. Officer Jake Duggan immediately placed Mr. Given under arrest and restrained him with handcuffs. Mr. Given was escorted by patrol car to the Pottawatomie County Public Safety Center on January 9, 2019. At all times, Mr. Given's medical crisis was obvious and apparent, but untreated.

24. Even with full knowledge that Mr. Given continued to experience hallucinations and delusional behavior, Officer Duggan alleged that he and

Patrol Officer Williams obtained a form from a doctor in the emergency department that stated Mr. Given could be transported to jail, however, the form has not been made available to any parties.

25. While at St. Anthony on January 8, 2019, healthcare professionals administered a variety of tests and examinations upon Mr. Given, including an electrocardiogram (ECG). The clinical impression thereof was of a normal ECG.

26. After obtaining a single point of entry (SPOE) consult, St. Anthony healthcare professionals recommended Mr. Given for mental health admission with an emergency order of detention.

27. On or about January 9, 2019, while being observed by St. Anthony for psychiatric placement, Shawnee, Oklahoma law enforcement took Ronald Given into custody for alleged Assault and Battery Upon a Police Officer and placed him into the PCPSC.

28. At the PCPSC, John/Jane Doe, under the auspices of Breonna Thompson and Lieutenant Baney, in complete disregard for Mr. Given's psychiatric condition and episodes, placed Mr. Given into the PCPSC equivalent of general population with other inmates.  The officers alleged that an altercation ensued but failed to provide any reports or videotape evidence of the alleged altercation.

29. A surveillance tape for the Pottawatomie Public Safety Center presents a clear case of excessive force, medical neglect, and a deliberate indifference to inadequate treatment and training.

30. On January 9, 2019, Mr. Given was placed in a cell by himself. Mr. Given continued to exhibit symptoms of psychiatric care and at some point, removed all of his clothing in the cell.

31. John/Jane Doe #1, an employee/officer of the Pottawatomie Public Safety Center entered Mr. Givens cell and attempted to subdue Mr. Given by striking him. The impact caused Mr. Given to fall to the floor hitting the back of his head on the concrete floor of the cell. After Mr. Given was lying on the floor, John/Jane Doe #2 and John/Jane Doe#3 entered the cell. The two officers attempted to restrain Mr. Given's arms while he laid flat on his back and the third officer placed his knee into the neck of Mr. Given. The neck restraint remained until Mr. Given showed signs of unconsciousness. Mr. Given laid motionless and after he showed no signs of breathing, three additional John/Jane Doe, employees/officers of the Potawatomie Public Safety Center, entered the cell and took turns attempting to revive Mr. Given. Mr. Given never responded to the cardiopulmonary resuscitation (CPR) and two individuals grabbed his arms while the other two grabbed his feet and transported Mr. Given out of the cell to an unknown location. Mr. Given was ultimately transported by REACT Ambulance Service.

32. John/Jane Doe, officers employed at and by PCPSC, vastly exceeded what could be legally cognizable as ordinary and reasonable force when they sought to resort to physicality to subdue Mr. Given and place him in isolation.

33. The force and means utilized by PCPSC officers on Mr. Given caused Mr. Given to have a cardiac arrest. This resulted in the performance of cardiopulmonary resuscitation (CPR) for approximately thirty (30) minutes prior to Mr. Given's arrival by ambulance at St. Anthony.

34. Due to the severe nature of Mr. Given's medical concerns, he was transported from St. Anthony's Hospital in Shawnee, Oklahoma to St. Anthony's hospital in Oklahoma City, Oklahoma. When he arrived at the hospital in Oklahoma City, he was comatose and intubated. The medical report also stated that Mr. given likely suffered anoxic brain injury from prolonged resuscitation and showed total brain death.

35. PCPSC management, employees, and staff knew or should have known that Mr. Given suffered from a debilitating mental health condition and ignored it.

36. Mr. Given's aberrant psychological episodes caused his behavior which resulted in the attack upon him by PCPSC officers and employees.

37. Mr. Given's died on January 16, 2019.

38. The Office of the Chief Medical Examiner found that Mr. Given died as a result of a homicide causing multiple system organ failure from cardiac arrhythmia, the physical altercation with PCPSC officers, and his psychiatric disorder.

### *First Cause of Action-Negligence*

39. Plaintiff recapitulates and incorporates all material allegations in paragraphs one (1) through thirty-eight (38), by reference herein.

40. Defendants had a duty to provide Mr. Given with reasonable psychiatric and medical care.

41. Defendants had a duty to protect Mr. Given from cruel and unusual punishments, and from unreasonable searches and seizures upon his person.

42. Defendants breached their duty to Mr. Given when they removed him from psychiatric care at St. Anthony and placed him in the general population at PCPSC.

43. Defendants breached their duty to Mr. Given when they used excessive force against his person contributing to or causing Mr. Given's death.

44. Defendants breached their duty to Mr. Given by failing to provide access to reasonable medical care after the implementation of excessive force which resulted in Mr. Given experiencing a myocardial infarction.

45. Defendants' deliberate actions against Mr. Given as expressed above are the actual and proximate cause of his injuries and resulting death.

46. As a result of Defendants' negligence, Plaintiff's decedent lost his life and is entitled to monetary damages, therefore.

### *Second Cause of Action- Excessive Force*

47. Plaintiff recapitulates and incorporates all material allegations in paragraphs one (1) through forty-six (46), by reference herein.

48. Oklahoma law provides a private cause of action for excessive force under Art. 2, § 30, of the Oklahoma Constitution, notwithstanding any limitations set forth in the Oklahoma Governmental Tort Claims Act (OGTCA), Okla. Stat. tit. 51, § 151-200. *Bosh v. Cherokee County Governmental Building Authority*, 2013 OK 9, 305 P.3d 994.

49. Defendants did not apply force against Mr. Given in a good faith effort to maintain or restore discipline but rather maliciously and sadistically for the very purpose of causing harm to Plaintiff's decedent.

50. Defendants did not have a need to apply the amount of force used on Mr. Given.

51. Defendants' use of force against Mr. Given was disparate in terms of the relationship between the need to use force and amount of force applied.

52. The fact that Mr. Given died as a result of the force used against him by PCPSC indicates that the force used was excessive indeed.

### *Violation of Civil Rights-42 U.S.C. 1983*

53. Plaintiff recapitulates and incorporates all material allegations in paragraphs one (1) through fifty-two (52), by reference herein.

54. Defendants deprived Mr. Given of rights and privileges afforded to him under the Fourth, Eighth and Fourteenth Amendments of the United States Constitution in violation of 42 U.S.C., § 1983.

55. Defendants have an affirmative duty to protect inmates from present and continuing harm and to ensure they receive adequate food, clothing, shelter, and medical care.

56. At all material times herein, Defendant Sheriff Booth, Defendant Breonna Thompson, and Pottawatomie County (PCPSC) had an obligation to the citizens of Pottawatomie County to maintain a jail that provided inmates protection from cruel and unusual punishment.

57. Defendant Breonna Thompson had a duty to establish training requirements to comply with state and federal standards. Defendant Breonna Thompson is also responsible for the administration and supervisory control involving the operations of PCPSC. Defendant Breonna Thompson is also responsible for a.) reviewing that appropriate disciplinary actions taken were in compliance with established procedures, b.) overseeing that an inmate's medical needs were met and were in compliance with established policies; and c.) reviewing and approving all incident reports, and forwarding accurate and completed reports to the Sheriff with appropriate recommendations. However, based on the investigations by other agencies, Breonna Thompson has failed to recognize the actions of any of her employees concerning the death of Mr. Given.

58. At all material times herein, Defendants had an obligation to the citizens of Pottawatomie County to ensure that inmates detained at PCPSC were provided protection against unreasonable seizures and cruel and unusual punishment.

59. At all material times herein, Defendants had an obligation to the citizens of Pottawatomie County to ensure that the serious psychiatric needs of inmates detained at PCPSC were timely and adequately addressed.

60. Defendants' failure to adequately attend to Mr. Given's serious psychiatric condition resulted in him experiencing unnecessary pain.

61. Defendants' failure to adequately attend to Mr. Given's serious psychiatric condition caused or contributed to his death.

62. Defendants' failure to adequately attend to Mr. Given's serious psychiatric condition was in violation of the Eighth Amendment.

63. Defendants' conduct evinced a deliberate indifference to the serious psychiatric needs and safety of Mr. Given.

64. Defendants knew, or should have known, that failure to follow proper protocol in dealing with psychiatric inmates and/or detainees caused or contributed to his death.

65. Defendants exhibited a reckless disregard for the safety and welfare of the inmates detained at PCPSC when they continued to use force against Mr. Given despite his psychiatric condition.

66. Defendants' conduct violated clearly established constitutional rights which a reasonable person in his position would have known.

67. Defendants had an obligation to ensure that all detainees at PCPSC received reasonable psychiatric care.

68. That in failing to take any action to protect Mr. Given, each of the Defendants acted with deliberate indifference to the safety and Constitutional rights of Plaintiff's decedent.

69. That Mr. Given did not receive reasonable mental health care.

70. That Mr. Given did not receive reasonable medical care.

71. That the above acts or omissions by Defendants are sufficiently harmful to evidence a deliberate indifference to Mr. Given's serious psychiatric and medical needs.

72. That the above acts or omissions by Defendants resulted in Mr. Given suffering an unnecessary and wanton infliction of pain thereby constituting cruel and unusual punishment forbidden by the Eighth Amendment.

73. That the above acts or omissions deprived Mr. Given of the minimal civilized measure of life's necessities.

74. All of the foregoing was done with reckless disregard of the Mr. Given's constitutional rights.

75. That the conduct at issue in paragraphs one (1) through sixty-seven (67) above also constitute reckless, intentional and life-threatening conduct that resulted in Mr. Given's death and entitle Plaintiff to an award of punitive damages.

WHEREFORE, Plaintiff respectfully requests this Court enter Judgment against Defendants for actual and compensatory damages in excess of $75,000.00, award punitive damages, attorney fees, costs, and any and all other relief the Court deems just and equitable.

Respectfully Submitted,

s/Ronald "Skip" Kelly
Ronald "Skip" Kelly, OBA # 4976
205 NW 63rd St., Ste. 150
Oklahoma City, OK 73116
(405) 235-1976: Tel
(405) 286-6316: Fax
kellyron01@yahoo.com
ATTORNEY FOR PLAINTIFF

-and-

s/Kevin R. Kemper
Kevin R. Kemper, #32968
Attorney at Law
128 W. Hefner
Oklahoma City, OK  73114
Phone: (405) 404-4938
Email: kemperlawoffice@gmail.com
ATTORNEY FOR PLAINTIFF