**IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| (1) | EVA GIVEN KOPADDY, AS ADMINISTRATOR FOR THE ESTATE OF RONALD GIVENS, Plaintiff, | ) ) ) ) ) |
| v. | | ) Case No. CIV-20-1280-G ) |
| (1) | POTTAWATOMIE COUNTY PUBLIC SAFETY CENTER TRUST an Oklahoma Title 60 authority; | ) **JURY TRIAL DEMANDED** ) ) |
| (2) | BREONNA R. THOMPSON, individually and in her capacity as Executive Director of the Pottawatomie County Public Safety Center Trust; | ) ) ) ) ) |
| (3) | MASON WILSON, individually and in his capacity as the Chief of Police of the Shawnee Police Department; | ) ) ) ) |
| (4) | BRAD BANEY, individually and in his official capacity as Lieutenant of the Pottawatomie County Public Safety Center; | ) ) ) ) |
| (5) | KORBIN WILLIAMS, individually and in his official capacity as a law enforcement officer; | ) ) ) ) |
| (6) | JAKE DUGGAN, individually and in his/her official capacity as a law enforcement officer; | ) ) ) ) |
| (7-12) | JOHN/JANE DOES (1-6), unknown individuals who were involved but not yet identified, and in their individual capacity, Defendants. | ) ) ) ) |

**FIRST AMENDED COMPLAINT**

COMES NOW Plaintiff, Eva Kopaddy, as Administrator of the Estate of Ronald Given,

Deceased, by and through her attorney of record, Ronald "Skip" Kelly, and pursuant to Rule 15 of

the Federal Rules of Civil Procedure submits her First Amended Complaint against the above-named Defendants as follows:

### Jurisdiction and Venue

1.     This cause of action is brought pursuant to 42 U.S.C. § 1983 and the Fourth, Eighth and Fourteenth Amendments to the United States Constitution.

2.     This Court has jurisdiction under 28 U.S.C. § 1331 and 28 U.S.C. § 1343.

3.     This Court also has jurisdiction under Federal Declaratory Judgment Act, 28 U.S.C. § 2201, *et seq*.

4.     Venue is proper under 28 U.S.C. § 1391(b) because a substantial part of the events or omissions causing Plaintiff's claims occurred in this District.

5.     The matter in controversy exceeds $75,000, exclusive of costs and interest.

6.     Plaintiff is now, and was always material hereto, a resident of Pottawatomie County, State of Oklahoma. (Plaintiff's decedent shall be referred to as "Mr. Given" or "Plaintiff's decedent" or "Ronald Given."). Eva Kopaddy is the court-appointed Administrator of the Estate of Ronald Givens, Deceased, by virtue of Letters of Administration issued to her in case number PB-2020-75 in the District Court of Pottawatomie County, State of Oklahoma.

7.     Defendant, Pottawatomie County Public Safety Center Trust ("PCPSCT") was established on February 4, 2002 for the use and benefit of the Beneficiary for the public purposes hereinafter set forth, under the authority of Title 60, Oklahoma Statute 1991 §§ 176-180.4.

8.     Defendant, Breonna R. Thompson ("Breonna Thompson"), is, and has been at all times pertinent to this action, the Executive Director of the Pottawatomie County Public Safety Center Trust, an Okla. Stat. tit. 19, §§ 904.1-904.10, authority, and is responsible for the operation of the PCPSCT. Breonna Thompson is being sued in both her individual capacity and

in her official capacity for acts performed while she was the Executive Director of the PCPSCT. Breonna Thompson is being sued in her individual and official capacity for violation of Mr. Given's rights under the Eighth and Fourteenth Amendments. Breonna Thompson, as the Executive Director and head of Pottawatomie County Public Safety Center Trust PCPSCT at all times relevant hereto was responsible for ensuring the safety and well-being of inmates detained and housed at the PCPSCT including the provision of appropriate medical care and treatment to inmates in need of such care. The Defendant, Breonna Thompson is, and was at all times pertinent hereto, responsible for creating, adopting, approving, ratifying and enforcing the rules, regulations, policies, practices, procedures, and/or customs of the PCPSCT.

9.      Defendant, Mason Wilson, is, and has been at all times pertinent to this action, the Chief of Police of the Shawnee Police Department ("SPD"), and is responsible for the operation of the SPD. Chief Wilson is being sued in both his individual capacity and in his official capacity for acts performed while he was the Chief of Police of the SPD. Chief Wilson is being sued in his individual and official capacity for violation of Mr. Given's rights under the Eighth and Fourteenth Amendments. Chief Wilson, as the head of SPD at all times relevant hereto was responsible for ensuring the safety and well-being of arrestees detained and in the custody of SPD including, as in the instant case, the provision of appropriate medical care and treatment to arrestees and detainees in need of such care. The Defendant, Chief Mason Wilson is, and was at all times pertinent hereto, responsible for creating, adopting, approving, ratifying and enforcing the rules, regulations, policies, practices, procedures, and/or customs of the SPD.

10.      Defendant, Brad Baney ("Lieutenant Baney"), is, and has been at all times pertinent to this action, the Lieutenant of the Pottawatomie County Public Safety Center, an Okla. Stat. tit. 19, §§ 904.1-904.10, authority, and, upon information and belief, is responsible

for supervision and oversight of detention officers and staff related to inmate custody, care, and control.  Lieutenant Baney was responsible for overseeing Mr. Given's security, health, and ensuring that Mr. Given's medical and mental health needs were met. Lieutenant Baney is being sued in both his individual and official capacity for acts performed while he was the Lieutenant of the PCPSCT. At all times relevant herein, Lieutenant Baney was acting under the color of law and within the course and scope of his employment with Pottawatomie County (and/or its associated Jail Trust), State of Oklahoma.

11.     Defendant, Jake Duggan ("Duggan"), is, and at all times material hereto, employed by the City of Shawnee Police Department as a duly appointed and sworn police officer and was acting in his individual capacity and/or under color of state law, and within the scope of his employment with the City of Shawnee Police Department, Pottawatomie County, State of Oklahoma. Duggan is being sued in both his individual and official capacity for acts performed while he was acting in his capacity as a law enforcement officer for, upon information and belief, the City of Shawnee and/or Pottawatomie County, State of Oklahoma.

12.     Defendant, Korbin Williams ("Williams"), is, and at all times material hereto employed by the City of Shawnee Police Department as a duly appointed and sworn police officer and was acting in his individual capacity and/or under color of state law, and within the scope of his employment with the City of Shawnee Police Department, Pottawatomie County, State of Oklahoma. Williams is being sued in both his individual and official capacity for acts performed while he was acting in his capacity as a law enforcement officer for, upon information and belief, the City of Shawnee and/or Pottawatomie County, State of Oklahoma.

13.     The names and identities of Defendants DOES 1 through 6 are presently unknown to Plaintiff.  Plaintiff alleges that each of Defendants DOES 1 through 6 were

employed by the PCPSCT.  Plaintiff alleges that each of Defendants DOES 1 through 6 were deliberatively indifferent to Mr. Given's medical needs and safety, violated his civil rights, negligently and wrongfully caused his death, and/or encouraged, directed, enabled and/or ordered other Defendants to engage in such conduct.

14.     Defendants' conduct was under color of state law within the meaning of 42 U.S.C., § 1983.

15.     By and through Defendants, Pottawatomie County deliberately failed to take remedial action in the face of actual and/or constructive knowledge of constitutional violations and the assault and battery against Plaintiff's decedent.

16.     At all material times hereto, Ronald Given was a resident of Pottawatomie County, State of Oklahoma.

17.     The acts and/or omissions giving rise to the Plaintiff's claims arose in Pottawatomie County, State of Oklahoma, which is within the Western District of Oklahoma.

### *Factual Background*

18.     Plaintiff recapitulates and incorporates all material allegations in paragraphs one (1) through sixteen (16) by reference herein.

19.     On or about January 8, 2019, law enforcement officers from the Shawnee Police Department responded to a call at Tractor Supply concerning an individual, Ronald Given, who was having a mental health crisis. According to Tractor Supply employees, Ronald Given came into the store, grabbed a shopping cart and started beating it against the store windows. He then went to the clothing section and began grabbing clothes off the racks and throwing them on the floor. It was when Given grabbed a sledgehammer

and headed toward the store windows that two employees restrained him and took away the sledgehammer. Both employees stated that the entire time Given was in the store he kept telling them to call the police because someone was trying to kill him.,

20.     When Shawnee police arrived on the scene, Given was on the ground with a Tractor supply employee holding him down. He communicated to the responding officers that his landlord had taken him to Walmart and while there was confronted by someone who informed him that there was a hit out for him and they were going to kill him. He stated that, initially, he was going to go to Cracker Barrell and break out the window but the people that were trying to kill him were there. He then went to Tractor Supply to start chaos in hopes that the police would be called.

21.     Ronald Given did not resist law enforcement in any manner and was transported to the emergency department located at SSM Health St. Anthony Hospital ("St. Anthony") in Shawnee, Oklahoma, without incident. Mr. Given was evaluated and it was determined that he should be placed in a behavioral health center. However, there were no beds available in the state. As such, he was admitted to the hospital with an Emergency Order of Detention ("EOD"). The transporting officers contacted headquarters and advised them of the circumstances and were instructed to "sit on" Given until he could be transported to a behavioral health center.

22.  January 9, 2019, Officer Jake Duggan arrived to relieve Officer Korbin Williams of watch duty. Duggan observed Mr. Given sweating and chanting unintelligibly while sitting in the hospital bed. Mr. Given stood up from the bed and started pulling at his back. Duggan asked him if he was okay and Given responded that he was fixing his back surgically. Duggan asked

6

him to get back in bed and Given complied. Shortly thereafter, Given stood up again, took of his gown and sock, and began walking toward the door of the hospital room. He told the officers to get out the way because he was leaving. The officers told him he could not leave and asked him to sit down. Officer Duggan stated that Mr. Given attempted to leave the hospital and stated that Given pushed his left hand into his shoulder. Officer Jake Duggan immediately placed Mr. Given under arrest and restrained him with handcuffs without further incident. Mr. Given was escorted by patrol car to the Pottawatomie County Public Safety Center on January 9, 2019. At all times, Mr. Given's medical crisis was obvious and apparent, but he remained untreated despite the arresting officer's specific knowledge that Given had been deemed to be experiencing a mental health crisis and in need of in-patient treatment.

23.   Even with full knowledge that Mr. Given continued to experience hallucinations and exhibit delusional behavior, Officer Duggan alleged that he and Patrol Officer Williams obtained a form from a doctor in the emergency department that stated Mr. Given could be transported to jail, however, the form has not been made available to any party and there is no reference to such a form in the medical records obtained.

24.   The officers' actions, i.e. arresting him for an alleged assault and battery and placing him in jail, were deliberately indifferent to his serious mental health needs. As recognized under Fourteenth Amendment jurisprudence and an analysis applied consistent with the Eighth Amendment, the officers' actions in failing to address Mr. Given's obvious mental health crisis, demonstrated a "more than ordinary lack of due care for the prisoner's interests or safety."

25.   The arresting officers had personally observed Mr. Given's erratic behavior and were fully aware that Mr. Given needed psychiatric treatment as determined by St. Anthony. They were aware that they were on guard duty pending Mr. Given's transport to an in-patient

mental health facility for treatment. Despite this specific knowledge, the officers chose to ignore the mental episode that Mr. Given was experiencing and abandoned the medically recommended treatment which ultimately led to Mr. Given's death.

26.   While at St. Anthony on January 8, 2019, healthcare professionals administered a variety of tests and examinations upon Mr. Given, including an electrocardiogram (ECG). The clinical impression thereof was of a normal ECG.

27.   At the PCPSC, John/Jane Doe, under the auspices of Breonna Thompson and Lieutenant Baney, in complete disregard for Mr. Given's psychiatric condition and episodes, placed Mr. Given into the PCPSCT equivalent of general population with other inmates. In a letter to a judge requesting a Medical O/R for Given after PCPSCT personnel rendered him unconscious, Lieutenant Baney falsely claimed that Given had been brought to the facility intoxicated. This characterization, though false, indicates that Baney observed Given displaying abnormal behavior. Upon information and belief, Baney knew, or should have known, that Given was an EOD and in need of mental health treatment. Baney alleged that Given became resistant with officers and was moved to a different holding cell after removing his clothing. Baney stated that Given remained resistant and was taken to the ground and placed in restraints. When back up arrived the restrains were removed. However, by this time Given was unresponsive.

28.   A surveillance tape for the Pottawatomie County Public Safety Center presents quite a different picture and depicts a clear case of excessive force, medical neglect, deliberate indifference to Mr. Given's health and safety and inadequate treatment and training.

29.   The surveillance tape indicates that on January 9, 2019, Mr. Given was placed in a cell by himself where he continued to exhibit symptoms indicating that he needed psychiatric

care. At one point, he removed his clothing. In response to him removing his clothing, John/Jane Doe #1, an employee/officer of the Pottawatomie Public Safety Center entered Mr. Givens cell and attempted to subdue Mr. Given by striking him. The impact caused Mr. Given to fall to the floor hitting the back of his head on the concrete floor of the cell.

30.   As Mr. Given lay on the cell floor, John/Jane Doe #2 and John/Jane Doe#3 entered the cell. The two officers attempted to restrain Mr. Given's arms while he laid flat on his back and the third officer placed his knee into  Mr. Given's neck. The neck restraint remained until Mr. Given was rendered unconscious. Mr. Given lay on the cell floor motionless and after he showed no signs of breathing, three additional John/Jane Doe, employees/officers of the Potawatomie Public Safety Center, entered the cell and took turns attempting to revive Mr. Given. Mr. Given never responded to the cardiopulmonary resuscitation (CPR) and two individuals grabbed his arms while the other two grabbed his feet and removed Mr. Given from the cell to an unknown location. Mr. Given was ultimately transported by REACT Ambulance Service to St. Anthony in Shawnee. He never regained consciousness.

31.  John/Jane Doe, officers employed at and by PCPSCT, vastly exceeded what could be legally cognizable as ordinary and reasonable force when they sought to resort to physicality to subdue Mr. Given and place him in isolation. Particularly in view of his obvious and observable mental distress.

32.  The force and means utilized by PCPSCT officers on Mr. Given caused Mr. Given to suffer cardiac arrest. This resulted in PCPSC personnel, unsuccessfully, performing cardiopulmonary resuscitation (CPR) for approximately thirty (30) minutes prior to Mr. Given's arrival by ambulance to St. Anthony. According to the medical examiner's report, Mr. Given was likely resuscitated to death.

9

33.   Due to the severe nature of Mr. Given's medical concerns after being physically assaulted by PCPSC personnel, he was transported from St. Anthony Hospital in Shawnee, Oklahoma to St. Anthony hospital in Oklahoma City, Oklahoma. When he arrived at the hospital in Oklahoma City, he was comatose and intubated. The medical report also stated that Mr. given likely suffered anoxic brain injury as a result of prolonged resuscitation and indicated total brain death.

34.   PCPSCT management, employees, and staff knew or should have known that Mr. Given suffered from a debilitating mental health condition and ignored it. He consistently displayed observable and obvious erratic behavior, including stripping naked and muttering incomprehensibly.

35.   Mr. Given's aberrant psychological episode caused his behavior which resulted in the attack upon him by PCPSC officers and employees.

36.   Mr. Given's died January 16, 2019.

37.   The Office of the Chief Medical Examiner found that Mr. Given died as a result of a homicide causing multiple system organ failure from cardiac arrhythmia, the physical altercation with PCPSCT officers, and his psychiatric disorder.

38.   Defendants deliberate indifference to Mr. Given's serious mental health issues both during his arrest and detention were in furtherance of and consistent with: (a) policies which Shawnee Police Department and PSPSC promulgated, created, implemented or possessed responsibility for the continued operation of; (b) policies which Shawnee Police Department and PSPSC had responsibility for implementing and which Chief Mason Wilson and Breonna R. Thompson assisted in developing; and (c) established procedures, customs and/or patterns and practices.

10

39. Defendants Thompson and Wilson failed to promulgate and implement and knowingly failed to enforce, adequate mental health policies responsive to the serious medical needs of arrestees/detainees/inmates like Mr. Given. In particular, during all times pertinent, there were no guidelines, or wholly inadequate guidelines, in place as to the standard of care specific to arrestees/detainees/inmates mental health needs. Additionally, to the extent there where policies or guidelines in place, due to inadequate training, both SPD and PSPSC personnel failed to provide the standard of care required to ensure the health and safety of arrestees/detainees/inmates in their custody and/or control. This failure to train constitutes deliberate indifference to the health and safety of arrestees/detainees/inmates like Mr. Given.

### First Cause of Action
### Deliberate Indifference in Violation of the Fourteenth Amendment

40. Plaintiff recapitulates and incorporates all material allegations in paragraphs one (1) through thirty-nine (39), by reference herein.

41. Defendants Duggan, Williams, Baney, John and Jane Does had a duty to provide Mr. Given with reasonable psychiatric and medical care, both at the point of arrest and detention given his observable, obvious and diagnosed mental health crisis.

42. Defendants Duggan, Williams, Baney, John and Jane Does had a duty to protect Mr. Given from cruel and unusual punishments, and from unreasonable searches and seizures upon his person.

43. Defendants Duggan and Williams breached their duty to Mr. Given when they removed him from psychiatric care at St. Anthony and delivered him to PCPSC where he was placed in the general population, despite full awareness of his mental health condition.

44. Defendants Baney, John and Jane Does breached their duty to Mr. Given when they

used excessive force against his person, contributing to or causing Mr. Given's death.

45.   Defendants Baney, John and Jane Does breached their duty to Mr. Given by failing to provide access to reasonable medical care after their use of excessive force which resulted in Mr. Given experiencing a myocardial infarction.

46.   Defendants' deliberate actions against Mr. Given as expressed above are the actual and proximate cause of his injuries and resulting death.

47.   Defendants John and Jane Does deliberate actions against Mr. Given were ratified and/or endorsed by Baney, who was in charge of PCPSC operations at all relevant times herein.

48.   The unconstitutional acts of the aforementioned Defendants are a direct and proximate result of policies, practices and/or customs developed, implemented, maintained and enforced by Defendants PCPSC, Thompson and Wilson.

49.   As a result of Defendants' negligence, Plaintiff's decedent lost his life and is entitled to monetary damages, therefore.

### Second Cause of Action
### Excessive Force in Violation of the Fourth and Fourteenth Amendments

50.   Plaintiff recapitulates and incorporates all material allegations in paragraphs one (1) through forty-nine (49), by reference herein.

51.   Defendants John and Jane Does did not apply force against Mr. Given in a good faith effort to maintain or restore discipline but rather maliciously and sadistically for the very purpose of causing harm to Plaintiff's decedent.

52.   The Defendants did not have a need to apply the amount of force used on Mr. Given, particularly in view of his obvious and observable mental health crisis.

53.   Defendants' use of excessive force against Mr. Given was disparate in terms of the

relationship between the need to use force and amount of force applied.

54.   Defendants John and Jane Does deliberate actions against Mr. Given were ratified and/or endorsed by Baney, who was in charge of PCPSC operations at all relevant times herein.

55.   The unconstitutional acts of the aforementioned Defendants are a direct and proximate result of policies, practices and/or customs developed, implemented, maintained and enforced by Defendants PCPSC and Thompson;

56.   The fact that Mr. Given died as a result of the force used against him by PCPSC indicates that the force used was excessive indeed.

### *Third Cause of Action*
### *Violation of Civil Rights Under 42 U.S.C. 1983*

57.   Plaintiff recapitulates and incorporates all material allegations in paragraphs one (1) through fifty-six (56), by reference herein.

58.   Defendants deprived Mr. Given of rights and privileges afforded to him under the Fourth, Eighth and Fourteenth Amendments of the United States Constitution in violation of 42 U.S.C., § 1983.

59.   Defendants have an affirmative duty to protect inmates from present and continuing harm and to ensure they receive adequate food, clothing, shelter, and medical care.

60.   At all material times herein, all Defendants had an obligation to the citizens of Pottawatomie County to maintain a jail that provided inmates protection from cruel and unusual punishment.

61.   Defendants PCSPC, Thompson and Wilson had a duty to establish training requirements to comply with state and federal standards. Defendants Thompson and Wilson are also responsible for the administration and supervisory control involving the operations of SPD

13

and PCPSCT. Defendants Thompson and Wilson are also responsible for (a) ensuring that appropriate disciplinary actions are taken in compliance with established procedures, (b) ensuring that an arrestee's/detainee's/inmate's medical needs were met and were in compliance with established policies, practices and customs; and (c) reviewing and approving all incident reports and forwarding accurate and completed reports to the Sheriff and City Commission with appropriate recommendations. However, Thompson and Wilson have failed to recognize the unconstitutionality of the actions of any of their employees concerning the death of Mr. Given.

62. At all material times herein, Defendants had an obligation to the citizens of Pottawatomie County to ensure that inmates arrested by SPD and detained at PCPSC were provided protection against unreasonable seizures and cruel and unusual punishment.

63. At all material times herein, Defendants had an obligation to the citizens of Pottawatomie County to ensure that the serious psychiatric needs of inmates arrested by SPD detained at PCPSC were timely and adequately addressed.

64. Defendants' failure to adequately attend to Mr. Given's serious psychiatric condition resulted in him experiencing unnecessary pain.

65. Defendants' failure to adequately attend to Mr. Given's serious psychiatric condition caused or contributed to his death.

66. Defendants' failure to adequately attend to Mr. Given's serious psychiatric condition was in violation of the Eighth Amendment.

67. Defendants' conduct evinced a deliberate indifference to the serious psychiatric needs and safety of Mr. Given.

68. Defendants knew, or should have known, that failure to follow proper protocol in dealing with psychiatric arrestees, inmates and/or detainees could cause or contribute to Mr.

14

Given's death or serious injury.

69.     Defendants PCSPC, Thompson and John and Jane Does exhibited a reckless disregard for the safety and welfare of the inmates detained at PCPSC when they continued to use force against Mr. Given despite his observable and obvious psychiatric condition.

70.     Defendants' conduct violated clearly established constitutional rights which a reasonable person in their position would have known.

71.     Defendants had an obligation to ensure that all detainees at PCPSC received reasonable psychiatric care.

72.     In failing to take any action to protect Mr. Given, each of the Defendants acted with deliberate indifference to the safety and Constitutional rights of Plaintiff's decedent.

73.     Mr. Given did not receive reasonable mental health care.

74.     Mr. Given did not receive reasonable medical care.

75.     The above acts or omissions by Defendants are sufficiently harmful to evidence a deliberate indifference to Mr. Given's serious psychiatric and medical needs.

76.     The above acts or omissions by Defendants resulted in Mr. Given suffering an unnecessary and wanton infliction of pain thereby constituting cruel and unusual punishment forbidden by the Eighth Amendment.

77.     The above acts or omissions deprived Mr. Given of the minimal civilized measure of life's necessities.

78.     All of the foregoing was done in reckless disregard of the Mr. Given's constitutional rights.

79.     That the conduct at issue in paragraphs one (1) through seventy-eight (78) above also constitute reckless, intentional, and life-threatening conduct that resulted in Mr. Given's death

and entitle Plaintiff to an award of punitive damages.

WHEREFORE, Plaintiff respectfully requests this Court enter Judgment against Defendants for actual and compensatory damages in excess of $75,000.00, award punitive damages, attorney fees, costs, and all other relief the Court deems just and equitable.

Respectfully Submitted,

s/Ronald "Skip" Kelly
Ronald "Skip" Kelly, OBA # 4976
205 NW 63rd St., Ste. 150
Oklahoma City, OK 73116
(405) 235-1976: Tel
(405) 286-6316: Fax
kellyron01@yahoo.com
ATTORNEY FOR PLAINTIFF

-and-

s/Kevin R. Kemper
Kevin R. Kemper, #32968
Attorney at
Law 128 W.
Hefner
Oklahoma City, OK 73114
Phone: (405) 404-4938
Email: kemperlawoffice@gmail.com
ATTORNEY FOR PLAINTIFF

## CERTIFICATE OF SERVICE

I certify that on this 16th day of March 2021, I electronically transmitted the foregoing document to the Clerk of Court using the ECF System for filing and transmittal of a Notice of Electronic Filing to the following ECF registrants:

Robert S. Lafferrante
Carson C. Smith
Pierce Couch Hendrickson Baysinger
& Green, LLP
1109 N. Francis Ave.
Oklahoma City, OK  73106
***Attorney for Defendants***
***Jake Duggan and Korbin Williams***

Wellon B. Poe
Collins Zorn & Wagner, PC
429 NE 50th Street, 2nd Floor
Oklahoma City, OK  73105
***Attorney for Defendants Brad Baney and Pottawatomie County Public Safety Center***

/s/ RONALD "SKIP" KELLY
RONALD "SKIP" KELLY

17