# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| (1) | EVA GIVEN KOPADDY, AS ADMINISTRATOR FOR THE ESTATE OF RONALD GIVEN,<br>           Plaintiff, | ) ) ) ) ) |
| v. | | ) Case No. CIV-20-1280-G<br>) |
| (1) | POTTAWATOMIE COUNTY PUBLIC SAFETY CENTER TRUST an Oklahoma Title 60 authority; | ) ) **JURY TRIAL DEMANDED**<br>) ) |
| (2) | BREONNA R. THOMPSON, individually and in her capacity as Executive Director of the Pottawatomie County Public Safety Center Trust; | ) ) ) ) ) ) |
| (3) | MASON WILSON, individually and in his capacity as the Chief of Police of the Shawnee Police Department; | ) ) ) ) |
| (4) | BRAD BANEY, individually and in his official capacity as Lieutenant of the Pottawatomie County Public Safety Center; | ) ) ) ) ) |
| (5) | KORBIN WILLIAMS, individually and in his official capacity as a law enforcement officer; | ) ) ) ) |
| (6) | JAKE DUGGAN, individually and in his/her official capacity as a law enforcement officer; | ) ) ) ) ) |
| (7-12) | JOHN/JANE DOES (1-6), unknown individuals who were involved but not yet identified, and in their individual capacity,<br>           Defendants. | ) ) ) ) |

## OBJECTION TO DEFENDANT MASON WILSON'S
## MOTION TO DISMISS AND BRIEF IN SUPPORT

COMES NOW, Plaintiff, Eva Kopaddy, Administrator of the Estate of Ronald Given, by and through her counsel or record and objects to Mason Wilson's Motion to Dismiss and Brief in Support [Doc. 27]. Defendant is not entitled to qualified immunity because he, by virtue of his position as Chief of the Shawnee Police Department who developed and implemented the policies governing as well as the training of the police officers guarding Mr. Given at the hospital, deprived the decedent to his clearly established constitutional right to medical attention. In support of this objection, Plaintiff urges as follows:

Defendants Mason Williams, as Chief of the Shawnee Police Department, is directly responsible for the policies governing Defendant officers Duggan and Williams as well as being responsible for their training. The officers were assigned to watch the decedent at St. Anthony Hospital who had been placed on an Emergency Order of Detention for a mental health crisis. Earlier in the day, Shawnee Police Department had responded to a call from a local store where the decedent was displaying erratic behavior, requesting that store employees contact the police because someone was trying to kill him. [Doc. 18 at ¶ 19]. It was apparent to the responding officers that decedent was suffering from a medical condition as they had him transported to a hospital rather than jail. (Id. at ¶ 21). The emergency physician who examined the decedent determined that the decedent should immediately be admitted to a behavioral health center. Unfortunately, there were no beds available, so the decision was made to keep the decedent at St. Anthony hospital and have the police "sit on" him until he could be transported to a mental health facility. (Id.).

While decedent was awaiting transport to a mental health facility, he again began to exhibit erratic behavior and attempted to leave the hospital. (Id. at ¶ 22). The Defendant officers observed decedent sweating, chanting unintelligibly and pulling at his back. (Id.). He asserted that he was fixing his back surgically, when asked. (Id.). He started undressing and attempted to leave the hospital room. Defendant officers told him he could not leave, and in his attempt to do so, decedent pushed Defendant Duggan's shoulder with his left hand. (Id.). Rather than handcuff him or ask the hospital for some other form of restraint or medical intervention while they continued to wait for transport to a mental health facility, Defendant Duggan immediately placed decedent under arrest and transported him to jail, despite being fully aware that decedent was in need of medical treatment. (Id.). These actions were taken based on the policies of the Shawnee Police Department and the training he had received as a Shawnee police officer.

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted). A plaintiff must allege specific facts that would support the conclusion that he is entitled to relief. *Khalik v. United Air Lines*, 671 F.3d 1188, 1191 (10th Cir. 2012) ("[M]ere labels and conclusions . . . will not suffice.") (internal quotation marks omitted). Accepting all alleged facts as true, it is clear that Defendants deprived decedent of his clearly established constitutional right to medical treatment based on department policies and training. *Donahue v. Wihongi*, 948 F.3d 1177, 1186 (10th Cir. 2020).

The government is obligated to provide medical treatment to those in its custody.

3

*Garcia v. Sale Lake City*, 768 F.2d 303, 307 (10th Cir.1985). Defendants Duggan and Williams displayed deliberate indifference to decedent's need for medical attention when they arrested and jailed him despite the medical diagnosis for immediate treatment. *Estate of Hocker by Hocker v. Walsh*, 22 F.3d 995, 998 (10th Cir. 1994). After decedent pushed Duggan's shoulder as he attempted to act out his delusions, rather than contact medical staff to see if they could sedate decedent or take some other action to calm the decedent during his observable mental health crisis, Defendants Duggan and Williams immediately arrested the decedent knowing full well he required medical attention. The reason they were even present at the hospital was to guard decedent and ensure he was transported to a mental health facility.

Plaintiff has alleged that the actions taken by Defendants Duggan and Williams were "sufficiently harmful to evidence deliberate indifference to [decedent's] medical needs." *McBride v. Deer*, 240 F. 3d 1287, 1289 (10th Cir. 2001). Rather than see to his well being and ensure he received the medical intervention he needed, they used decedent's expression of the delusions he was suffering, i.e. attempting to leave the hospital because someone was trying to kill him, to place him under arrest and take him to jail where he could not receive the attention he required. These actions were taken in conformance with established departmental policy and training. In addition, they apparently did not communicate to the jail that decedent was suffering a mental health crisis because Lt. Baney, who was supervising the jail at the time decedent was transported to the jail, asserted that decedent was intoxicated in his judicial request for decedent to be released from jail for medical treatment. [Doc. 18 at ¶ 27]. This failure to communicate the

decedent's medical condition to the jail was also in conformance with departmental policy and training. As such, rather than receive his prescribed treatment, decedent ended up dead as a result of Mason Wilson's failure to implement appropriate policies and training regarding the handling of an individual in police custody suffering a mental health crisis and requiring immediate medical intervention. Defendant officers Duggan and Williams deliberate indifference to his need for immediate medical intervention for his mental health crisis was a reflecting of these failures.

Plaintiff has alleged both objective and subjective facts that establish the Defendant officers Duggan's and Williams' deliberate indifference to the decedent's serious medical needs. It has been objectively established because it was after evaluation by a physician that a mental health intervention was prescribed. Upon evaluation, decedent was placed on an emergency order of detention requiring admission to a mental health facility. A bed was not immediately available, so decedent was kept at St. Anthony under guard by Shawnee police. In addition, decedent's condition was so obvious to the police that originally arrived on scene in response to a call about decedent transported him to the hospital rather than jail.

From a subjective standpoint, Defendants Duggan and Williams were assigned to guard decedent while he awaited a bed in a mental health facility. As such, they were specifically aware that he was undergoing a mental health crisis. They also observed him in a delusional and erratic state. Despite what they knew, they arrested him, ironically enough, because of actions he took as a result of his medical condition and deprived him of the treatment a physician had already determined he needed.

5

Defendant Wilson's liability arises from his subordinates, Defendants Duggan and Williams, having violated decedent's constitutional rights. "To impose §1983 liability the plaintiff first ha[s] to establish the supervisor's subordinates violated the [C]onstitution." *Dodds v. Richardson*, 614 F.3d 1185, 1194-95 (10th Cir. 2010) (Quotations omitted). As discussed *supra*, decedent had a well established and constitutionally protected right to receive necessary medical treatment while in police custody. Defendants Duggan and Williams knowingly deprived him of this right when they took him to jail rather than "sit[ting] on" him until a bed was available in a mental health facility. The constitutional deprivation was a direct result of Defendant Wilson's policies and training.

Taking all Plaintiff's allegations as true, this Court should deny Defendant Wilson's Motion to Dismiss because Plaintiff has alleged facts sufficient to support that decedent was deprived of his clearly established constitutional right to medical treatment as a result of Defendant Wilson's failure to implement appropriate policies and training with regard to the provision of necessary medical treatment to individuals in police custody. Defendant officers were fully aware of decedent's diagnoses, the emergency order of detention, and observed for themselves his erratic and delusional behavior. Despite their actual knowledge, Defendants arrested decedent because of actions he took in furtherance of his delusional behavior, taking him to jail, rather than seeking assistance from medical personnel, and depriving him of the mental health intervention he so desperately needed. Upon information and belief they failed to communicate, or did not sufficiently communicate, decedent's condition to jail personnel, who assumed decedent was intoxicated. These deprivations came as a direct result of Defendant Wilson's failures in

policymaking and training. As such, Defendant Wilson's motion to dismiss should be denied.

Dated this 3rd day of May, 2021.    Respectfully submitted,

CHANDA GRAHAM, PLLC
PO Box 7771
Edmond, OK  73083
Telephone: (405) 209-8980
Facsimile: (405) 302-0606
Email: ChandaGPLLC@gmail.com

/s *Chanda R. Graham*_____
Chanda R. Graham, OBA #17809

## CERTIFICATE OF SERVICE

I certify that on this 3rd day of May 2021, I electronically transmitted the foregoing pleading to the Clerk of Court using the ECF System for filing. Based on the records currently on file in this case, the Clerk of Court will transmit a Notice of Electronic Filing to those registered participants of the ECF System.

/s *Chanda R. Graham*_____
Chanda R. Graham