## UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF OKLAHOMA

EVA GIVEN KOPADDY,              )
as Administrator for the Estate     )
of Ronald Givens,                    )
                                     )
     Plaintiff,                        )
                                     )
v.                                   )     Case No. CIV-20-1280-G
                                     )
POTTAWATOMIE COUNTY          )
PUBLIC SAFETY CENTER TRUST, )
an Oklahoma Title 60 authority, et al.  )
                                     )
     Defendants.                      )

## <u>ORDER</u>

Now before the Court is a Motion to Dismiss (Doc. No. 27), filed by Defendant

Mason Wilson.  Plaintiff Eva Given Kopaddy has responded (Doc. No. 30), and Defendant

has replied (Doc. No. 31).  Having reviewed the parties' filings, the Court makes its

determination.

    *I.    Background*

Plaintiff Eva Given Kopaddy is the court-appointed Administrator of the Estate of

Ronald Given, Am. Compl. (Doc. No. 18) ¶ 6, whose claims arise from the circumstances

surrounding Mr. Given's death.[1]  Plaintiff alleges that on January 8, 2019, the Shawnee

Police Department ("SPD") responded to a call at Tractor Supply concerning Mr. Given,

who, during a mental health crisis, caused a disturbance in the store.  *See id.* ¶ 19.  Police

transported Mr. Given to the emergency department of SSM Health St. Anthony Hospital

---

[1] Although the pleading identifies the deceased as "Ronald Givens," it is undisputed that
his surname is properly spelled "Given."

in Shawnee, Oklahoma.  *Id.* ¶ 21.  There, medical staff evaluated Mr. Given and determined that he should be placed in a behavioral health center, but there were no beds available in the state.  *Id.*  Mr. Given was therefore admitted to St. Anthony with an Emergency Order of Detention ("EOD").  *Id.*  The transporting officers advised SPD headquarters of the situation and were instructed to "sit on" Mr. Given until he could be transported to a behavioral center.  *Id.*

On January 9, 2019, SPD Officer Jake Duggan arrived at St. Anthony to relieve Officer Korbin Williams, who was previously assigned to watch Mr. Given.  *Id.* ¶ 22.  Mr. Given, still suffering from a mental health crisis, attempted to leave the hospital.  *Id.*  While Mr. Given was attempting to leave, Mr. Given pushed Officer Duggan.  *Id.*  Officer Duggan then placed Mr. Given under arrest and transported him by patrol car to the Pottawatomie County Public Safety Center ("PCPSC").  *Id.*

After Officer Duggan and Officer Williams delivered Mr. Given to the PCPSC, Plaintiff alleges that PCPSC personnel exceeded ordinary and reasonable force in attempting to subdue Mr. Given, causing Mr. Given to suffer cardiac arrest.  *See id.* ¶¶ 27-32.  Mr. Given, comatose and intubated, was subsequently transported to St. Anthony Hospital in Oklahoma City, where he died on January 16, 2019.  *Id.* ¶ 33.  Plaintiff alleges that Mr. Given's death was the result of the altercation at PCPSC.  *See id.* ¶ 37.

On March 16, 2021, Plaintiff filed an Amended Complaint against the Pottawatomie County Public Safety Center Trust and various Pottawatomie County and City of Shawnee

2

officials, bringing federal constitutional claims pursuant to 42 U.S.C § 1983.  *See id.* ¶ 1.[2]
As relates to the instant Motion, Plaintiff has sued Defendant Wilson both in his individual
capacity and in his official capacity as the Chief of the Shawnee Police Department.
Defendant Wilson now moves to dismiss the claims against him pursuant to Rule 12(b)(6)
of the Federal Rules of Civil Procedure, arguing that Plaintiff has not pled sufficient facts
to plausibly state a claim against Defendant Wilson in his individual or official capacity.
*See* Def.'s Mot. at 7-20.

      II.     *Standard of Decision*

      In analyzing a motion to dismiss under Rule 12(b)(6), the court "accept[s] as true
all well-pleaded factual allegations in the complaint and view[s] them in the light most
favorable to the plaintiff."  *Burnett v. Mortg. Elec. Registration Sys., Inc.*, 706 F.3d 1231,
1235 (10th Cir. 2013).  A complaint fails to state a claim on which relief may be granted
when it lacks factual allegations sufficient "to raise a right to relief above the speculative
level on the assumption that all the allegations in the complaint are true (even if doubtful
in fact)."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (footnote and citation
omitted); *see also Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) ("[T]o
withstand a motion to dismiss, a complaint must contain enough allegations of fact to state
a claim to relief that is plausible on its face." (internal quotation marks omitted)).  Bare
legal conclusions in a complaint are not entitled to the assumption of truth; "they must be

---

[2] Defendants Williams and Duggan have filed a Motion to Dismiss (Doc. No. 23), and
Defendant Brad Baney has filed an Answer (Doc. No. 22).  The remaining defendants—
Pottawatomie County Public Safety Center Trust, Breaonna R. Thompson, and John/Jane
Does 1-6—have not answered or otherwise responded to the Amended Complaint.

supported by factual allegations" to state a claim for relief.  *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

     III.    *The Motion to Dismiss*

     Plaintiff brings her claims against Defendant Wilson pursuant to 42 U.S.C. § 1983, the "remedial vehicle for raising claims based on the violation of [federal] constitutional rights." *Brown v. Buhman*, 822 F.3d 1151, 1161 n.9 (10th Cir. 2016).  To succeed on a claim under § 1983, a plaintiff must show "the violation of a right secured by the Constitution and laws of the United States" and that the violation "was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988); *see* 42 U.S.C. § 1983.  Defendant Wilson argues that Plaintiff has not pled sufficient facts to state a claim against him in his official capacity.  *See* Def.'s Mot. at 14.  Defendant Wilson also argues that Plaintiff has not pled sufficient facts to state a claim against him in his individual capacity, or, alternatively, Defendant Wilson is entitled to qualified immunity. *See id.* at 7-13.

     Plaintiff's claims against Defendant Wilson, in both his official and individual capacities, are premised on three theories of liability: (1) Defendant Wilson promulgated, created, implemented, or enforced policies, practices, and/or customs within the SPD that resulted in the violation of Mr. Given's constitutional rights; (2) Defendant Wilson failed to promulgate, implement, and enforce adequate mental health policies regarding arrestees such as Mr. Given; and (3) Mr. Given's constitutional rights were violated as a result of the inadequate training of SPD personnel on the standard of care necessary to ensure the health and safety of arrestees in their custody.  *See* Am. Compl. ¶¶ 38, 39, 48, 61.

A.   <u>Official-Capacity Claims</u>

"[A section 1983] suit against a municipality and a suit against a municipal official acting in his or her official capacity are the same." *Myers v. Okla. Cnty. Bd. of Cnty. Comm'rs*, 151 F.3d 1313, 1316 n.2 (10th Cir. 1998) (alteration in original) (internal quotation marks omitted).  Consequently, the Court will treat the claims against Mason Wilson in his official capacity as claims against the City of Shawnee. *See, e.g.*, *Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985) ("[A]n official-capacity suit is, in all respects other than name, to be treated as a suit against the entity."); *Graves v. Thomas*, 450 F.3d 1215, 1218 (10th Cir. 2006) ("The Graves[es]' claim against Officer Ford and Chief Thomas in their official capacities is actually a claim against the town of Haskell . . . .").

To establish municipal liability, a plaintiff must demonstrate: (1) a municipal policy or custom, and (2) a direct causal link between the policy or custom and the injury alleged. *Waller v. City & Cnty. of Denver*, 932 F.3d 1277, 1283-84 (10th Cir. 2019).  To be actionable, the municipal policy may be one of the following:

> "(1) a formal regulation or policy statement; (2) an informal custom amounting to a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a custom or usage with the force of law; (3) the decisions of employees with final policymaking authority; (4) the ratification by such final policymakers of the decisions—and the basis for them—of subordinates to whom authority was delegated subject to these policymakers' review and approval; or (5) the failure to adequately train or supervise employees, so long as that failure results from deliberate indifference to the injuries that may be caused."

*Id.* at 1283 (quoting *Bryson v. City of Okla. City*, 627 F.3d 784, 788 (10th Cir. 2010)).

"Finally, at least for claims of inadequate hiring, training, or other supervisory practices, a

plaintiff 'must demonstrate that the municipal action was taken with deliberate indifference as to its known or obvious consequences.'"  *Id.* at 1284 (quoting *Bd. of Cty. Comm'rs v. Brown*, 520 U.S. 397, 407 (1997) (internal quotation marks omitted)).

       i.      *Official-Capacity Liability Based on Promulgation of Policies or Customs*

Defendant Wilson argues that Plaintiff has not adequately identified a policy or custom of the SPD and has not alleged facts supporting a causal link between a policy or custom and Mr. Given's alleged constitutional violation.  *See* Def.'s Mot. at 17.

The official policy or custom at issue is unclear.  Plaintiff asserts that the arresting officers' deliberate indifference to Mr. Given's serious mental health issues during his arrest "were in furtherance of and consistent with: (a) policies which Shawnee  Police Department . . . promulgated, created, implemented or possessed  responsibility for the continued operation of; (b) policies which Shawnee Police Department . . . had responsibility for implementing and which Chief Mason Wilson . . . assisted in developing; and (c) established procedures, customs and/or patterns and practices."  Am. Compl. ¶ 38.  But neither in these allegations nor elsewhere in the Amended Complaint does Plaintiff describe any such policy or custom of the SPD so that it can be identified as the one Plaintiff is alleging resulted in a violation of Mr. Given's constitutional rights. "Plaintiff simply makes conclusory allegations about policies and practices without providing any specifics as to these policies and practices."  *Sabus v. Pawnee Cnty. Bd. of Cnty. Comm'rs*, No. CIV-21-846-J, 2022 WL 2113528, at *1 (W.D. Okla. Apr. 25, 2022) (internal quotation marks omitted).  This is inadequate to allege a policy or custom claim.

Additionally, Plaintiff's conclusory assertion that "[t]he unconstitutional acts of the aforementioned Defendants are a direct and proximate result of policies, practices and/or customs developed, implemented, maintained and enforced by Defendants PCPSC, Thompson and Wilson" is insufficient to allege a causal link between any action by Defendant Wilson and a violation of Mr. Given's constitutional rights.  *See Smith v. Allbaugh*, 987 F.3d 905, 912 (10th Cir. 2021) (holding that, in the context of a § 1983 claim brought against defendants in their individual capacities, conclusory allegations regarding enforcement or failure to enforce policies without sufficiently pled facts supporting a causal connection between the defendant's actions and the constitutional violation are insufficient to state a claim).

Therefore, Plaintiff has not stated a plausible claim against Defendant Wilson in his official capacity based on Defendant Wilson's promulgation of policies or customs that resulted in a violation of Mr. Given's constitutional rights.

   ii.    *Official-Capacity Liability Based on Failure to Promulgate Appropriate Policies*

Plaintiff also asserts that Defendant Wilson "failed to promulgate and implement and knowingly failed to enforce, adequate mental health policies responsive to the serious medical needs of arrestees/detainees/inmates like Mr. Given."   Am. Compl. ¶ 39. Specifically, Plaintiff states that "[i]n particular, during all times pertinent, there were no guidelines, or wholly inadequate guidelines, in place as to the standard of care specific to arrestees['] . . . mental health needs." *Id.*  Defendant argues that Plaintiff has not adequately

alleged that Defendant's failure to implement policies caused a violation of Mr. Given's constitutional rights.  *See* Def.'s Mot. at 16-17.  The Court agrees.

Plaintiff's failure to plead a causal link between Defendant Wilson's alleged failure to promulgate, implement, and enforce adequate policies and Mr. Given's constitutional injury, or to allege facts from which such a causal link can plausibly be inferred, precludes Plaintiff from sufficiently demonstrating Defendant Wilson's liability under § 1983 based on a theory of failure to promulgate or enforce appropriate policies.  *See Smith*, 987 F.3d at 912.  "Moreover, a claim based on an alleged policy or custom of failing to act . . . can be successful only if the inaction resulted from 'deliberate indifference' to the plaintiff's rights, as opposed to mere negligence."  *Brocks v. Bd. of Cnty. Comm'rs of Sedgwick Cnty.*, 329 F. App'x 200, 202 (10th Cir. 2009).  Plaintiff has not plausibly alleged that Defendant Wilson's inaction in his failure to promulgate, implement, and enforce adequate mental health policies "resulted from 'deliberate indifference' to the plaintiff's rights."  *Id.*  For these reasons, Plaintiff has not stated a claim upon which relief can be granted against Defendant Wilson in his official capacity based on Defendant Wilson's failure to promulgate, implement, and enforce adequate mental health policies.

### iii.    *Official-Capacity Liability Based on Failure to Train*

Defendant Wilson argues that the single incident involving Mr. Given is insufficient to establish failure to train by the SPD.  *See* Def.'s Mot. at 17-19.  The Court agrees.

"[A] municipality's decision not to train its officers rises to the level of an official government policy under § 1983 only when the failure to train amounts to deliberate indifference to the rights of persons with whom the untrained employees come into

8

contact." *George ex rel. Estate of Bradshaw v. Beaver Cnty. ex rel. Beaver Cnty. Bd. of Comm'rs*, 32 F.4th 1246, 1253 (10th Cir. 2022) (alterations and internal quotation marks omitted)). "Deliberate indifference requires proof that a municipal actor disregarded a known or obvious consequence of his action." *Id.* at 1253. "Ordinarily, a plaintiff must prove a pattern of untrained employees' constitutional violations to show deliberate indifference." *Id.* Here, the incident involving Mr. Given is the only instance cited to support Plaintiff's allegations of failure to train by the SPD. Plaintiff has not alleged any facts showing that Defendant Wilson or the SPD had notice that there was a training deficiency regarding the SPD's handling of arrestees suffering from a mental health crisis.

"Deliberate indifference may be found absent a pattern of unconstitutional behavior only in a narrow range of circumstances where a violation of federal rights is a highly predictable or plainly obvious consequence of a municipality's action or inaction." *Waller v. City & Cnty. of Denver*, 932 F.3d 1277, 1284 (10th Cir. 2019) (internal quotation marks omitted). Plaintiff, however, has not alleged any facts supporting that the alleged failure to train fits into this narrow range of circumstances.

Accordingly, Plaintiff's conclusory statement that "this failure to train constitutes deliberate indifference to the health and safety of arrestees/detainees/inmates like Mr. Given," Am. Compl. ¶ 39, is insufficient, by itself, to plausibly allege that Defendant Wilson or the SPD acted with deliberate indifference in failing to train SPD personnel. *See Iqbal*, 556 U.S. at 678 (stating that "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements" may not establish a claim upon which

relief can be granted).  For these reasons, Plaintiff has not sufficiently stated a claim against Defendant Wilson in his official capacity based on a failure to train.

### B. Individual-Capacity Claims

Defendant Wilson contends that Plaintiff has not pled sufficient facts to establish § 1983 liability against Defendant Wilson individually, specifically arguing that Plaintiff has not alleged that Defendant Wilson was personally involved in the alleged violation of Mr. Given's constitutional rights.  *See* Def.'s Mot. at 7.

"In the context of § 1983 liability based on a defendant's supervisory role, the plaintiff must show an 'affirmative link between the supervisor and the constitutional violation,' by demonstrating (1) the supervisor's personal involvement, (2) causation, and (3) a culpable state of mind."  *Lemmons v. Clymer*, 609 F. App'x 949, 956 (10th Cir. 2015) (quoting *Schneider v. City of Grand Junction Police Dep't*, 717 F.3d 760, 767 (10th Cir. 2013)).  "Personal involvement does not require direct participation because § 1983 states any official who causes a citizen to be deprived of her constitutional rights can also be held liable."  *Dodds v. Richardson*, 614 F.3d 1185, 1195 (10th Cir. 2010) (alteration and internal quotation marks omitted).

Like Plaintiff's claims against Defendant Wilson in his official capacity, Plaintiff's individual-capacity claims are premised on: (1) promulgation of policies, practices, and/or customs within the SPD that resulted in the violation of Mr. Given's constitutional rights; (2) failure to promulgate, implement, and enforce adequate mental health policies regarding arrestees like Mr. Given; and (3) failure to train.  The Court considers these theories in turn.

      *i.      Individual-Capacity Liability Based on Promulgation of Policies or Customs*

"A defendant supervisor's promulgation, creation, implementation, or utilization of a policy that caused a deprivation of plaintiff's rights . . . could . . . constitute[] sufficient personal involvement." *Dodds*, 614 F.3d at 1195.  But Plaintiff's vague reference to "policies" and "procedures, customs and/or patterns and practices," without further specification about what those policies were, is insufficient to plead personal participation by Defendant Wilson.  *See Farris v. Stepp*, No. 20-CV-02346, 2021 WL 5200210, at *12 (D. Colo. Nov. 9, 2021) (finding that the plaintiff had not alleged personal participation by a supervisor defendant where the plaintiff did not identify the policies or procedures referenced in his complaint, allege or explain how those unidentified policies and procedures caused his constitutional injury, and did not allege that the supervisor defendant knew or should have known that the alleged policies or procedures would lead to the constitutional injury).

Even if Plaintiff had adequately identified a policy promulgated by Defendant Wilson, Plaintiff has not pled facts from which it can plausibly be inferred that such a policy caused a violation of Mr. Given's constitutional rights.  *See Smith*, 987 F.3d at 912 (holding that conclusory allegations regarding enforcement or failure to enforce policies without sufficiently pled facts supporting a causal connection between the defendant's actions and the constitutional violation are insufficient to state a claim).  For these reasons, Plaintiff has not stated a claim upon which relief can be granted against Defendant Wilson in his individual capacity based on his promulgation of a policy or custom that violated Mr. Given's constitutional rights.

ii.   *Individual-Capacity Liability Based on Failure to Promulgate Appropriate Policies*

"A plaintiff could establish the defendant-supervisor's personal involvement by demonstrating his personal participation, his exercise of control or direction, . . . his failure to supervise, or his knowledge of the violation and acquiesce[nce] in its continuance." *Dodds*, 614 F.3d at 1195 (alteration in original) (citation and initial quotation marks omitted). But, as with Plaintiff's official-capacity claim against Defendant Wilson based on his failure to promulgate appropriate mental health policies, Plaintiff fails to plead facts supporting a causal connection between Defendant Wilson's failure to promulgate appropriate policies and the violation of Mr. Given's constitutional rights in the context of Plaintiff's individual capacity-claim against Defendant Wilson. *See Smith*, 987 F.3d at 912. Accordingly, Plaintiff's claim against Defendant Wilson in his individual capacity based on a failure to promulgate, implement, and enforce adequate mental health policies must be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6).

iii.   *Individual-Capacity Liability Based on Failure to Train*

Where the only alleged involvement of a supervisor is based on inadequate training, a defendant must show 'essentially a complete failure to train, or training that is so reckless or grossly negligent that future misconduct is almost inevitable.'" *Lemmons*, 609 F. App'x at 956 (quoting *Currier v. Doran,* 242 F.3d 905, 925 (10th Cir. 2001)). Regarding failure to train, Plaintiff alleges:

> [T]o the extent there were policies or guidelines in place, due to inadequate training, both SPD and PSPSC personnel failed to provide the standard of care required to ensure the health and safety of arrestees/detainees/inmates in their custody and/or control. This failure to train constitutes deliberate

indifference to the health and safety of arrestees/detainees/inmates like Mr.
Given.

Am. Compl. ¶ 69.  The Amended Complaint also states that Defendant Wilson "had a duty

to establish training requirements to comply with state and federal standards."  *Id.* ¶ 61.

These allegations, however, do not tie the alleged failure to train SPD personnel to

Defendant Wilson as an individual, and so Plaintiff fails to allege personal participation by

this defendant in a violation of Mr. Given's constitutional rights.  For these reasons,

Plaintiff has not adequately stated a claim against Defendant Wilson in his individual

capacity based on Defendant Wilson's failure to train SPD personnel.

CONCLUSION

For these reasons, even viewing the facts alleged as true, Plaintiff has failed to state

a plausible claim against Defendant Wilson in either his official or individual capacity.[3]

Accordingly, Defendant Wilson's Motion to Dismiss (Doc. No. 27) is GRANTED.  All

claims raised in the Amended Complaint against Defendant Wilson are dismissed without

prejudice pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

IT IS SO ORDERED this 29th day of March, 2024.

CHARLES B. GOODWIN
United States District Judge

---

[3] Because Plaintiff fails to state a claim against Defendant Wilson in either his individual
or official capacity, the Court does not reach Defendant Wilson's assertion of qualified
immunity.  *See Hill v. Dep't of Air Force*, 884 F.2d 1318, 1320 (10th Cir. 1989); *Benge v.
City of Tulsa*, No. 15-CV-714, 2016 WL 10935187, at *3 (N.D. Okla. June 30, 2016).