UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| EVA GIVEN KOPADDY, | ) | |
| as Administrator for the Estate | ) | |
| of Ronald Givens, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. CIV-20-1280-G |
| | ) | |
| POTTAWATOMIE COUNTY | ) | |
| PUBLIC SAFETY CENTER TRUST, | ) | |
| an Oklahoma Title 60 authority, et al. | ) | |
| | ) | |
| Defendants. | ) | |

**ORDER**

Now before the Court is a Joint Motion to Dismiss (Doc. No. 23), filed by Defendants Jake Duggan and Korbin Williams. Plaintiff Eva Given Kopaddy has responded to the Joint Motion (Doc. No. 28), and Defendants have replied (Doc. No. 29). Having reviewed the parties' filings, the Court makes its determination.

I.     *Background*

Plaintiff Eva Given Kopaddy is the court-appointed Administrator of the Estate of Ronald Given, Am. Compl. (Doc. No. 18) ¶ 6, whose claims arise from the circumstances surrounding Mr. Given's death.[1] Plaintiff alleges that on January 8, 2019, the Shawnee Police Department ("SPD") responded to a call at Tractor Supply concerning Mr. Given, who appeared to be suffering from a mental health crisis. *See id.* ¶¶ 19-20. Police transported Mr. Given to the emergency department of SSM Health St. Anthony Hospital

---

[1] Although the pleading identifies the deceased as "Ronald Givens," it is undisputed that his surname is properly spelled "Given."

in Shawnee, Oklahoma. *Id.* ¶ 21. There, medical staff evaluated Mr. Given and determined that he should be placed in a behavioral health center, but there were no beds available in the state. *Id.* Mr. Given was therefore admitted to St. Anthony with an Emergency Order of Detention ("EOD"). *Id.* The transporting officers advised SPD headquarters of the situation and were instructed to "sit on" Mr. Given until he could be transported to a behavioral center. *Id.*

On January 9, 2019, SPD Officer Jake Duggan arrived at St. Anthony to relieve Officer Korbin Williams, who was previously assigned to watch Mr. Given. *Id.* ¶ 22. Plaintiff alleges that after Officer Duggan's arrival, Mr. Given continued to exhibit symptoms of a mental health crisis. *See id.* At one point, Mr. Given stood up, took off his gown and socks, and began walking toward the door of his hospital room, telling the officers that he was leaving. *Id.* The officers told Mr. Given he could not leave and asked Mr. Given to sit down. *Id.* Mr. Given persisted in trying to leave the hospital, and while Mr. Given was attempting to leave, he pushed Officer Duggan. *Id.* Officer Duggan then placed Mr. Given under arrest and transported him by patrol car to the Pottawatomie County Public Safety Center ("PCPSC"). *Id.*

Plaintiff states that "[a]t all times, Mr. Given's medical crisis was obvious and apparent, but he remained untreated despite the arresting officer's specific knowledge that Given had been deemed to be experiencing a mental health crisis and in need of in-patient treatment." *Id.* According to Plaintiff, Officer Duggan asserts that he and Officer Williams obtained a form from a doctor in the emergency department stating Mr. Given could be

transported to jail, but Plaintiff represents that this form has not been made available to any party and is not contained in Mr. Given's medical records.  *See id*. ¶ 23.

After Officer Duggan and Officer Williams delivered Mr. Given to the PCPSC, Plaintiff alleges that PCPSC personnel exceeded ordinary and reasonable force in attempting to subdue Mr. Given, causing him to suffer cardiac arrest.  *See id.* ¶¶ 27-32. Mr. Given, comatose and intubated, was subsequently transported to St. Anthony Hospital in Oklahoma City, where he died on January 16, 2019.  *Id.* ¶ 33.  Plaintiff alleges that Mr. Given's death was the result of the altercation at the PCPSC.  *See id.* ¶ 37.

On March 16, 2021, Plaintiff filed an Amended Complaint against the Pottawatomie County Public Safety Center Trust and various Pottawatomie County and City of Shawnee officials, bringing federal constitutional claims pursuant to 42 U.S.C § 1983.  *See id.* ¶ 1.[2] Defendant Duggan and Defendant Williams now move this Court to dismiss all claims against them pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted, asserting that they are entitled to qualified immunity.  *See* Jt. Mot. at 1.

II.     *Standard of Decision*

In analyzing a motion to dismiss under Rule 12(b)(6), the court "accept[s] as true all well-pleaded factual allegations in the complaint and view[s] them in the light most favorable to the plaintiff."  *Burnett v. Mortg. Elec. Registration Sys., Inc.*, 706 F.3d 1231,

---

[2] Defendant Mason Wilson has filed a Motion to Dismiss (Doc. No. 27), and Defendant Brad Baney has filed an Answer (Doc. No. 22).  The remaining defendants—Pottawatomie County Public Safety Center Trust, Breaonna R. Thompson, and John/Jane Does 1-6— have not answered or otherwise responded to the Amended Complaint.

1235 (10th Cir. 2013). A complaint fails to state a claim on which relief may be granted when it lacks factual allegations sufficient "to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (footnote and citation omitted); *see also Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) ("[T]o withstand a motion to dismiss, a complaint must contain enough allegations of fact to state a claim to relief that is plausible on its face." (internal quotation marks omitted)). Bare legal conclusions in a complaint are not entitled to the assumption of truth; "they must be supported by factual allegations" to state a claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

III.     *The Joint Motion to Dismiss*

Plaintiff brings her claims against Defendants Duggan and Williams pursuant to 42 U.S.C. § 1983, the "remedial vehicle for raising claims based on the violation of [federal] constitutional rights." *Brown v. Buhman*, 822 F.3d 1151, 1161 n.9 (10th Cir. 2016). To succeed on a claim under § 1983, a plaintiff must show "the violation of a right secured by the Constitution and laws of the United States" and that the violation "was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988); *see* 42 U.S.C. § 1983. Defendants do not dispute that they are SPD officers and were acting in that capacity when they arrested Mr. Given and took him from the hospital to the PCPSC; however, Defendants argue that they are entitled to qualified immunity and so too dismissal from this action. *See* Jt. Mot. at 1-2, 6.

A.   Official-Capacity Claims

Plaintiff has sued Defendant Duggan and Defendant Williams in both their individual and official capacities.  *See* Am. Compl. ¶¶ 11, 12.  Defendants "move the Court to dismiss all of Plaintiff's claims against them in Plaintiff's Amended Complaint," asserting "Plaintiff's Complaint fails to state a claim upon which relief can be granted as to these Defendants, as they are entitled to qualified immunity given the allegations in the Complaint."  Jt. Mot. at 1.  Qualified immunity—the only basis for dismissal asserted in the Joint Motion—does not provide a basis for dismissal of claims brought against defendants in their official capacities, however.  *See Cox v. Glanz*, 800 F.3d 1231, 1239 n.1 (10th Cir. 2015) ("The defense of qualified immunity is available only in suits against officials sued in their personal capacities, not in suits against officials sued in their official capacities." (omission and internal quotation marks omitted)).  Defendants having raised no pertinent argument, the claims brought against Defendant Duggan and Defendant Williams in their official capacities are unaffected by this disposition of the Joint Motion to Dismiss.

B.   Individual-Capacity Claims

Plaintiff's first cause of action alleges that Defendants Duggan and Williams violated his Fourteenth Amendment rights by acting with deliberate indifference to his medical needs, specifically asserting that "Defendants Duggan and Williams breached their duty to Mr. Given when they removed him from psychiatric care at St. Anthony and delivered him to PCPSC where he was placed in the general population, despite full awareness of his mental health condition."  Am. Compl. ¶¶ 40-49.  Plaintiff's second cause

of action relates to excessive force in violation of the Fourth and Fourteenth Amendments by PCPSC personnel and does not implicate Defendant Duggan or Defendant Williams. *See id.* ¶¶ 50-56. The third cause of action is titled "Violation of Civil Rights under 42 U.S.C § 1983,"[3] and, in the body of this section, Plaintiff alleges that "Defendants deprived Mr. Given of rights and privileges afforded to him under the Fourth, Eighth and Fourteenth Amendments of the United States Constitution in violation of 42 U.S.C., § 1983." It is not clear which of the several defendants Plaintiff is referring to in the third cause of action. Defendants Duggan and Williams, however, move to dismiss "all claims against them in Plaintiff's Amended Complaint." Jt. Mot. at 1. Therefore, for the purposes of evaluating the Joint Motion, the Court will assume that Plaintiff's reference to "Defendants" in her third cause of action includes Defendants Duggan and Williams.

### i. *Applicable Standards Regarding Qualified Immunity*

"Qualified immunity protects officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Thomas v. Kaven*, 765 F.3d 1183, 1194 (10th Cir. 2014) (internal quotation marks omitted). While a defendant may assert the defense of qualified immunity in a motion to dismiss, doing so "subjects the defendant to a more challenging standard of review than would apply on summary judgment." *Id.* (internal quotation marks omitted). "At [the motion to dismiss] stage, it is the defendant's conduct

---

[3] A violation of § 1983 is not a cause of action in and of itself. Rather, § 1983 is the "remedial vehicle for raising claims based on the violation of [federal] constitutional rights," *Brown*, 822 F.3d at 1161 n.9, meaning that a plaintiff must allege the violation of some constitutional right and not simply a violation of the statute.

6

*as alleged in the complaint* that is scrutinized for 'objective legal reasonableness.'"

*Behrens v. Pelletier*, 516 U.S. 299, 309 (1996).  "In resolving a motion to dismiss based

on qualified immunity, the court considers (1) whether the facts that a plaintiff has alleged

make out a violation of a constitutional right, and (2) whether the right at issue was clearly

established at the time of defendant's alleged misconduct."  *Keith v. Koerner*, 707 F.3d

1185, 1188 (10th Cir. 2013) (internal quotation marks omitted); *Robbins*, 519 F.3d at 1249

(10th Cir. 2008) ("[The] plaintiffs must allege facts sufficient to show (assuming they are

true) that the defendants plausibly violated their constitutional rights, and that those rights

were clearly established at the time.").  The Court may exercise its discretion in "deciding

which of the two prongs of the qualified immunity analysis should be addressed first in

light of the circumstances in the particular case at hand."  *Pearson v. Callahan*, 555 U.S.

223, 236 (2009).

    *ii.*    *Fourth Amendment Claims*

As a threshold matter, the basis of any Fourth Amendment claim against Defendant

Duggan or Defendant Williams is unclear.  The Fourth Amendment affords individuals

"the right to be secure in their persons, houses, papers, and effects, against unreasonable

searches and seizures."  U.S. Const. amend. IV.  Any Fourth Amendment violation by

Defendants Duggan and Williams would necessarily pertain to Mr. Given's arrest—the

only search or seizure effectuated by Defendant Duggan or Defendant Williams.  Plaintiff

does not allege that the arresting officers used excessive force in arresting Mr. Given,[4]

---

[4] Plaintiff does, however, allege that the PCPSC personnel used excessive force against
Mr. Given after he was booked into the PCPSC.  *See* Am. Compl. ¶¶ 45, 50-56.

arrested him unlawfully, or otherwise acted contrary to the Fourth Amendment during the arrest. Rather, Plaintiff states without elaboration that "[t]he officers' actions, i.e., arresting him for an alleged assault and battery and placing him in jail, were deliberately indifferent to his serious mental health needs." Am. Compl. ¶ 24.

Because Plaintiff has not alleged sufficient facts to plausibly show that Defendant Duggan or Defendant Williams violated Mr. Given's Fourth Amendment rights or that Mr. Given's right to be free from an otherwise lawful arrest was clearly established at the time of his arrest, Defendant Duggan and Defendant Williams are entitled to qualified immunity as to any claims asserting a violation of Mr. Given's Fourth Amendment rights. Consequently, the Joint Motion to Dismiss is GRANTED to the following extent: any claims against Defendant Duggan or Defendant Williams in their individual capacities asserting a violation of Mr. Given's Fourth Amendment rights shall be dismissed.

### iii.    Eighth Amendment Claims

Whether Plaintiff brings an Eighth Amendment claim against Defendant Duggan or Defendant Williams is unclear. To the extent that Plaintiff asserts that Defendant Duggan or Defendant Williams violated his Eighth Amendment rights, pretrial detainees such as Plaintiff are protected under the Fourteenth Amendment and not the Eighth Amendment. *See Olsen v. Layton Hills Mall*, 312 F.3d 1304, 1315 (10th Cir. 2002); *Mork v. Salt Lake Cnty.*, No. 2:03-CV-686, 2005 WL 3050990, at *4 (D. Utah Nov. 15, 2005) ("The Tenth Circuit has distinguished pretrial detainees . . . from convicted prisoners, and held that [p]retrial detainees are protected under the Due Process Clause rather than the Eighth Amendment." (alteration in original) (internal quotation marks omitted)).

8

Accordingly, Plaintiff has not alleged sufficient facts to establish that Defendant Duggan or Defendant Williams violated Mr. Given's Eighth Amendment rights or that Mr. Given's rights under the Eighth Amendment were clearly established at the time of his arrest. Defendant Duggan and Defendant Williams are therefore entitled to qualified immunity as to any claims asserting a violation of Mr. Given's Eighth Amendment rights. Consequently, the Joint Motion to Dismiss is GRANTED to the following extent: any claims against Defendant Duggan and Defendant Williams in their individual capacities asserting a violation of Mr. Given's Eighth Amendment rights shall be dismissed.

  *iv.*  *Fourteenth Amendment Claims*

  Plaintiff asserts that Defendants Duggan and Williams' actions in arresting Mr. Given and taking him from the hospital to the PCPSC were deliberately indifferent to Mr. Given's serious mental health needs and so violated Mr. Given's rights under the Fourteenth Amendment. *See* Am. Compl. ¶¶ 24-25; *see also* Pl.'s Resp. at 3. "The Fourteenth Amendment 'entitles pretrial detainees to the same standard of medical care owed to convicted inmates under the Eighth Amendment.'" *McCowan v. Morales*, 945 F.3d 1276, 1290 (10th Cir. 2019) (quoting *Rife v. Okla. Dep't of Pub. Safety*, 854 F.3d 637, 641, 647 (10th Cir. 2017)). Therefore, to succeed on a Fourteenth Amendment deliberate-indifference claim a plaintiff "must show 'deliberate indifference to his serious medical needs.'" *Clark v. Colbert*, 895 F.3d 1258, 1267 (10th Cir. 2018) (quoting *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)).

  As explained above, "[i]n resolving a motion to dismiss based on qualified immunity, the court considers (1) whether the facts that a plaintiff has alleged make out a

violation of a constitutional right, and (2) whether the right at issue was clearly established at the time of defendant's alleged misconduct." *Keith*, 707 F.3d at 1188 (internal quotation marks omitted).  In the Joint Motion to Dismiss, Defendants focus on the second prong as it relates to Plaintiff's claims regarding denial of medical care.  *See* Defs.' Mot. at 4-7. Defendants have not argued that their actions in intentionally removing Mr. Given from the hospital, where he was admitted with an EOD and was awaiting transportation to an inpatient facility, and taking him to the PCPSC were not deliberately indifferent to his medical needs.  The Court concludes that Plaintiff has adequately alleged the violation of a constitutional right.  *See Martinez v. Beggs*, 563 F.3d 1082, 1088-90 (10th Cir. 2009) (addressing the objective and subjective standards for deliberate indifference on a Fourteenth Amendment claim); Am. Compl. ¶¶ 22-25 (alleging that Defendants knew that Mr. Given was "in need of in-patient treatment" and "chose to ignore the mental episode Mr. Given was experiencing").

As to whether the right at issue was clearly established at the time of Defendants' alleged misconduct, "[t]he relevant, dispositive inquiry . . . is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Stewart v. Beach*, 701 F.3d 1322, 1330 (10th Cir. 2012) (internal quotation marks omitted).  "[A] case directly on point" is not required, but "existing precedent must have placed the statutory or constitutional question beyond debate." *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011).  For a right to be clearly established there must be either controlling authority (i.e., a Supreme Court or published Tenth Circuit decision) or "a robust consensus of cases of persuasive authority" from other courts that "ha[s] found the law to be as the plaintiff

maintains." *Id.* at 741-42 (internal quotation marks omitted); *Sanchez v. Labate*, 564 F. App'x 371, 373 (10th Cir. 2014) (internal quotation marks omitted); *see Apodaca v. Raemisch*, 864 F.3d 1071, 1076 & n.3 (10th Cir. 2017).  "[T]he right allegedly violated must be established, not as a broad general proposition, but in a particularized sense so that the contours of the right are clear to a reasonable official." *Reichle v. Houston*, 566 U.S. 658, 665 (2012) (citations and internal quotation marks omitted).

        In her Response, Plaintiff argues that Defendants deprived Mr. Given of his clearly established constitutional right to medical care, displaying deliberate indifference to Mr. Given's serious medical needs by removing him from the hospital despite his prescription for immediate treatment.  *See* Pl.'s Resp. at 3.  Defendants argue that "there is not a qualifying case of sufficient [similarity] to the particular situation that unfolded at St. Anthony's Hospital in Shawnee and *en route* to the Pottawatomie County Safety Center for the purpose of the clearly established prong."  Jt. Mot. at 6.

        Two decisions of the Tenth Circuit are instructive.  In *Olsen v. Layton Hills Mall*, the appellate court considered whether an arresting officer could be held liable for failing to attend to the mental health needs of a pretrial detainee.  The plaintiff, who suffered from obsessive compulsive disorder, had a panic attack while the arresting officer was transporting the plaintiff to jail.  *See Olsen*, 312 F.3d 1304, 1309-10 (10th Cir. 2002).  The plaintiff told the officer twice that he was having a panic attack, but the officer ignored him.  *Id.* at 1310, 1317.  The Tenth Circuit held that a reasonable jury could find that the plaintiff's mental health condition was sufficiently serious and that the arresting officer knew of and disregarded "an excessive risk to [the plaintiff's] health." *Id.* at 1316, 1317.

In *Martin v. Board of County Commissioners of the County of Pueblo*, the appellate court recognized that "deliberate indifference is shown not only by failure to provide prompt attention to the medical needs of a pre-trial detainee, but also by intentionally interfering with the treatment once prescribed." *Martin*, 909 F.2d 402, 406 (10th Cir. 1990) (internal quotation marks omitted). The Tenth Circuit upheld the district court's decision to deny qualified immunity at summary judgment to officers who, pursuant to an outstanding warrant, arrested the plaintiff at the hospital where she had been receiving treatment for injuries sustained in a car accident. *See id.* at 403-04, 406. The Tenth Circuit held that the plaintiff had "identified a clearly established constitutional standard by which her inadequate medical attention claim must be judged in the familiar 'deliberate indifference to serious medical needs' test." *Id*. at 406. And the Tenth Circuit agreed that the defendants had failed to demonstrate that their actions in taking the plaintiff from the hospital in her serious, fragile condition without contacting the attending physician were objectively reasonable in light of clearly established law. *See id.*

Taken together, these cases support a finding that the contours of Mr. Given's right to medical care for his mental health condition were "clear to a reasonable official" in 2019. *See Reichle*, 566 U.S. at 665; *see also Martin*, 909 F.2d at 406. Specifically, these cases demonstrate that it would have been clear to a reasonable officer in 2019 that interference with Mr. Given's prescribed medical treatment by arresting him and taking him from the hospital to the jail (and thereby denying him such treatment) would violate the Constitution if that interference constituted deliberate indifference to Mr. Given's serious medical needs.

Plaintiff has adequately alleged, at this early stage of litigation, that the mental health crisis allegedly being experienced by Mr. Given presented a serious medical need and that the interference with prescribed medical treatment effected by Defendants' removal of Mr. Given constituted deliberate indifference to that condition and violation of a clearly established right.  Accordingly, the Court concludes that Defendant Duggan and Defendant Williams have not shown that they are entitled to qualified immunity with regard to the alleged violation of Mr. Given's Fourteenth Amendment rights.  As a result, Defendant Duggan and Defendant Williams' Joint Motion to Dismiss Plaintiff's claims against them in their individual capacities alleging violations of the Fourteenth Amendment is DENIED.

## CONCLUSION

As outlined above, Defendant Duggan and Defendant Williams' Joint Motion to Dismiss (Doc. No. 23) is GRANTED IN PART AND DENIED IN PART, as follows:

- Plaintiff's individual-capacity Fourth Amendment and Eighth Amendment claims against these Defendants are dismissed without prejudice; and

- Plaintiff's individual-capacity Fourteenth Amendment claims against these Defendants shall not be dismissed at this juncture.

Plaintiff's claims against Defendant Duggan and Defendant Williams in their official capacities remain pending for disposition.

This matter shall be set for a status and scheduling conference on the Court's next available conference docket.

IT IS SO ORDERED this 29th day of March, 2024.

CHARLES B. GOODWIN
United States District Judge